IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL WAYNE JACKSON, | § | |
| TDCJ-CID No. 1106978 | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-08-246 |
| | § | |
| NATHANIEL QUARTERMAN, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS  DIVISION, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER GRANTING
## RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Pending in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for

Summary Judgment (Document No. 12) against Petitioner's Federal Application for Writ of Habeas

Corpus (Document No. 1).   Having considered the motion, the response in opposition (Document

No. 20), the claims raised by Petitioner in his § 2254 Application (Document No. 1), the state court

records, and the applicable law, the Court ORDERS, for the reasons set forth below, that

Respondent's Motion for Summary Judgment (Document No. 12) is GRANTED, Petitioner's Federal

Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and that this case is

DISMISSED WITH PREJUDICE.

## I.     Introduction and Procedural History

Michael Wayne Jackson ("Jackson") is currently incarcerated in the Texas Department of

Criminal Justice, Correctional Institutions Division, as a result of a 2002 felony conviction, enhanced

by two prior felony convictions, in the 179th District Court of Harris County, Texas, for aggravated

assault with a deadly weapon, Cause No. 885397. Jackson was charged by indictment on August 17, 2001, found guilty by a jury on May 24, 2002, and sentenced by the jury after a punishment phase to twenty-five years incarceration. The conviction was affirmed on appeal on June 26, 2003, in an unpublished opinion. *Jackson v. State*, No. 14-02-00551-CR.

On November 20, 2007, Jackson filed a state application for writ of habeas corpus challenging his conviction. His application was denied by the Texas Court of Criminal Appeals on January 9, 2008, without written order on the findings of the state trial court without hearing. *Ex parte Jackson*, Application No. WR-68,441-02. This § 2254 proceeding, filed by Jackson on or about January 17, 2008, followed. Respondent has filed a Motion for Summary Judgment (Document No. 12), to which Jackson has filed a response in opposition (Document No. 20). This § 2254 proceeding is therefore ripe for ruling.

## II.    <u>Factual Background</u>

The factual background, as set forth by the Fourteenth Court of Appeals in its written opinion affirming Jackson's conviction, is as follows:

> Houston Police Department patrol officer David Curry was dispatched to an assault at an apartment complex on March 11, 2001 at 7:30 am. When he arrived, he saw emergency personnel carrying the complainant, Mary Roberson, down the apartment stairs. Curry saw Roberson had wounds to her face and was crying. She appeared frightened and excited, and was worried about her children.

> Curry learned the assault had occurred about fifteen or twenty minutes before Curry's arrival at the scene. Roberson told Curry her boyfriend had assaulted her. She also told Curry she had moved to a new apartment in an effort to get away from her boyfriend, but he came to the apartment and asked her to give him a ride to work in the U-Haul vehicle she had rented for the move. Roberson initially stalled by saying she could not find her identification or was waiting for someone. She eventually refused to take appellant. Roberson told Curry appellant then picked up a 30 to 35 pound end table and threw it at Roberson. They struggled over the table, and

2

Roberson fell onto the sofa.  Roberson tried to hide her face under the pillows, but, according to what Roberson told Curry, appellant repeatedly struck her with the end table.

After Curry finished talking to Roberson, he spoke with Roberson's daughter Shacota, who was standing by her mother near the ambulance.  According to Curry, Shacota was upset and crying because her mother was being taken away in the ambulance and had been assaulted.  Shacota also appeared excited.  Shacota said she saw appellant strike her mother with the table.  Appellant also struck Shacota with the table.  Because they were in the process of moving, they did not have a telephone in the apartment, so Shacota told her brother to leave, find a telephone, and call the police.  Shacota also told Curry they had moved to get away from appellant.

Within five minutes of Curry's arrival and fifteen minutes from the time of the assault, Curry also spoke with Shaneque, Roberson's niece.  According to Curry, Shaneque appeared excited, fearful, and angry.  Shaneque stated she saw appellant strike Roberson with the end table.  Shaneque said she grabbed an iron and hit appellant in the head to prevent him from striking Roberson any more.  Shaneque stated when she tried to intervene, appellant hit her with the "night stand," as well.

Roberson was transported to the hospital with fractures to her eye sockets and face and severe swelling to her eyes, nose, and face.  Curry testified he saw the table inside the apartment and believed it could cause serious bodily injury or death if used as a weapon.

After obtaining the information from the witnesses at the scene, Curry attempted to locate appellant.  Officer Darrell Frank accompanied Curry, and the two officers went to a nearby townhouse where one of appellant's relatives lived.  A person at the townhouse led Curry inside.  The person also called for appellant to come downstairs.  While Curry was inside the front part of the house, Frank went to the back.  Curry heard Frank telling appellant to "get down."  Curry ran to the back of the house where he saw appellant on a patio cover outside a second story window.  The officers ordered appellant to get down as appellant screamed profanities at the officers.  Frank described appellant's demeanor as "very hostile."

Appellant eventually climbed back through the window.  Frank stayed near the backyard while Curry went to the front of the house.  Curry told Frank over the radio that appellant had run out the front door, and Curry was chasing appellant on foot.  Frank initially joined the chase, but eventually returned to get his patrol car.  Curry chased appellant through two apartment complexes and over fences before he apprehended him.  After Curry captured appellant, Frank and Officer Richard Lowe assisted Curry in handcuffing appellant and placing him in the patrol car.  Once appellant was in custody, the officers noticed appellant had a cut on his head, a cut Curry believed was consistent with what Shaneque had told Curry about hitting

appellant with the iron.

Appellant testified at trial, admitting he had been convicted of two felonies and had been arrested or convicted for several criminal offenses. He stated he never hit Roberson with the table or any other object. Instead, Shacota, Shaneque, and Roberson's teenage son began attacking appellant after appellant got into a verbal argument with Roberson. Appellant testified he never hit Roberson, and Roberson never hit him. Although he did not see who was hitting whom, appellant knew someone hit him and someone hit Roberson. Appellant claimed he never grabbed a table because everything was still packed. He testified he fled to his aunt's house to wait until everything cooled down. He said, if he had known Roberson's son had called the police, he would have left his aunt's house because he was on parole and did not want to go back to jail.

Jennifer Varela, a social worker and expert in the psychological aspects of domestic violence, testified for the defense and also in rebuttal for the State. After observing appellant's testimony, Varela testified he exhibited the typical behavior pattern of a domestic batterer. Specifically, she stated the fact appellant minimized his responsibility, used the passive voice, characterized Roberson and the children as overreacting to the argument, and fled with the intention of coming back when Roberson calmed down were common or typical behavior patterns of people who commit family violence. Varela testified she was under the impression Roberson was not cooperating with the State in this prosecution. Finally, Varela stated it was not uncommon for victims of domestic abuse to refuse to cooperate because of financial reasons, emotional attachments to the batterer, or fear.

*Jackson v. State*, No. 14-02-00551-CR.

## III.   Claims

Jackson raises essentially six claims in his § 2254 application:

1.      He is actually innocent;

2.      He was denied his Sixth Amendment right to confront and cross-examine witnesses;

3.      His trial counsel was ineffective for:

        a.      failing to subpoena Jackson's original trial attorney, Marcelyn Curry, to testify at trial;

        b.      failing to interview Jennifer Varela before she testified at trial;

4

      c.      asking the trial court to include all manner and means alleged in the indictment in the court's charge;

      d.      representing Jackson while under a conflict of interest; and

      e.      failing to obtain a hearing on Jackson's Motion for New Trial;

4.      He was denied a fair and impartial trial due to prosecutorial misconduct;

5.      The trial court erred by failing to grant his motion to dismiss and failing to include an instruction in the charge on self-defense; and

6.      The evidence was legally and factually insufficient.

Jackson raised claims five and six in his direct appeal. He raised the remainder of his claims in his state application for writ of habeas corpus. Respondent maintains in his Motion for Summary Judgment no relief is available to Jackson on claim one because Jackson is unable to produce new, reliable evidence not presented at trial which would show no reasonable juror would have convicted him in light of the new evidence. Regarding claims two and four, because Jackson did not raise those claims in his direct appeal, and because the Texas courts found the claims to be procedurally barred from review in the state habeas proceeding, Respondent maintains the claims are likewise procedurally barred from review herein. As for the remaining claims, Respondent argues Jackson is not entitled to relief because the Texas courts' rejection of those claims was not contrary to or an unreasonable application of clearly established Federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

IV.     **Standard of Review**

    A.     **Merits Review under § 2254(d)**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams*, 529 U.S. at 405-406).  A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably

applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000).  In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1) (2000).  *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd*, 124 S.Ct. 1652 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding.  Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Woodford*, 534 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable.").  Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is

7

not determinative.  In addition, the correctness of the state court's decision is not determinative.  As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).  Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning.  *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

     **B.**    **Procedural Bar**

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).  In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983).  Once a state court has relied on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750.  A fundamental miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333

(1992).

## V.    Discussion – Merits Review

### A.    Actual Innocence (Claim One)

In his first claim, Jackson maintains he is actually innocent of the aggravated assault with a deadly weapon charge.

"Supreme Court jurisprudence does not support an independent claim for federal habeas relief based on an allegation of actual innocence." *Dowthitt v. Johnson*, 180 F.Supp.2d 832, 843 (S.D. Tex. 2000) (Atlas, J.). A claim of actual innocence may, however, be a "'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo*, 512 U.S. 298, 316 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). To serve as such a "gateway", however, a petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," and must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 324, 327.

Here, the Texas Court of Criminal Appeals found "because the evidence alleged by the applicant to support his claim of actual innocence was available prior to the time of trial, the applicant fails to allege sufficient facts which, if true, would show that there is newly discovered evidence of the applicant's innocence and that, by clear and convincing evidence, despite the evidence of guilt that supports the conviction, no reasonable juror could have found the applicant guilty in light of the alleged new evidence." *Ex parte Jackson*, WR-68,441-02 at 86. Given the State courts' conclusion,

Jackson has not stated a viable claim of actual innocence under either *Herrera* or *Schlup*.

### B. Ineffective Assistance of Counsel (Claim Three)

Ineffective assistance of counsel claims are generally measured by reference to the clearly established federal law set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, to be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show his counsel was deficient and the deficiency prejudiced him to the extent that a fair trial could not be had.  *Id*. at 687.  Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable.  *Id*. at 687-689.  The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.  A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief.  *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993).  In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so

serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record.  Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).  The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691.  Counsel will not be judged ineffective only by hindsight.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003); *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 2462 (2005) ("hindsight is discounted").

### a.    Failure to subpoena Marcelyn Curry

In his state application for writ of habeas corpus, Jackson claimed his counsel was ineffective for failing to subpoena his original trial counsel, Marcelyn Curry ("Curry").  In rejecting the claim, the Court of Criminal Appeals found "the applicant fail[ed] to demonstrate that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different." *Ex parte Jackson*, WR-68,441-02 at 87.  The State courts' rejection of this ineffectiveness claim is not contrary to or an unreasonable application of *Strickland*.  The standard for assessing an attorney's

performance under *Strickland* is objective reasonableness.  Here, the record shows Jackson wished

to have Curry testify as to what Roberson, her daughter and niece said to her while signing an

affidavit of non-prosecution.  However, those statements constitute hearsay and such testimony could

not be properly admitted at trial.  *See* TEX. R. EVID. 801.  It cannot be said counsel's performance

was objectively unreasonable.  Therefore, under § 2254(d), no relief is available on this ineffectiveness

claim.

**b.      Failing to interview Jennifer Varela**

In his second ineffectiveness claim, Jackson contends counsel was ineffective for failing to

interview the State's expert witness, Jennifer Varela ("Varela"), prior to trial.  In connection with

Jackson's state application for writ of habeas corpus, trial co-counsel, Cedrick L. Muhammad, was

ordered to address Jackson's claims of ineffectiveness.  In an affidavit filed with the trial court on

December 22, 2004, Muhammad stated as follows with respect to the decision not to interview

Varela prior to trial:

> Jennifer Varela was the State's expert witness in the area of why witnesses in
> domestic violence cases don't show up for trial of the case.  We objected to the
> witness being present in the courtroom during the trial of the case if in fact she was
> going to testify at some point in the trial.
>
> Once the Judge overruled our objection and allowed the witness to remain in the
> courtroom where she would be allowed to hear other witness testimony then be
> allowed to give possible rebuttal or punishment evidence it became our strategic
> decision to call her to the witness stand during our case-in-chief to mitigate her
> testimony and the damage it could cause the Defendant by showing the jury that the
> witness had not talked to the missing witnesses, had not reviewed the facts of the
> case, and had no first hand knowledge of any of the facts of the case.
>
> She testified that she had not interviewed any of the missing witnesses, she had not
> reviewed the facts of the case, and she in fact had no first had knowledge of any of
> the facts of the case.  That was the only evidence we thought important in her
> testifying.  It was learned through the State during the argument of our objection with
> the Judge what her possible testimony would be if the State called her to the stand for

> rebuttal or punishment. The visiting Court found no reasons why the witness could
> not testify or be subjected to the 'Rule.' Our decision to call her to the stand was
> sound trial strategy in light of the damage she might have caused the Defendant if the
> Jury assumed she was familiar with the facts of the case.
>
> The Defendant participated in the decision making process. We discussed this
> strategy with him at counsel table, and he agreed.

*Ex parte Jackson*, WR-68,441-02 at 62. The contents of Muhammad's December 22, 2004, affidavit

were found to be true by the Texas Court of Criminal Appeals. *Id.* at 86. Based on the contents of

Muhammad's affidavit, which are generally supported by the record, Muhammad's failure to

interview Varela prior to trial does not constitute deficient performance within the meaning of

*Strickland*. Accordingly, the state courts' rejection of this claim was not contrary to or an

unreasonable application of *Strickland*, and was not based on an unreasonable determination of the

facts in light of the evidence. Under § 2254(d), this ineffectiveness claim fails.

### c. Requesting trial court to include "all manner and means" alleged in the indictment in the court's charge.

In his third ineffectiveness claim, Jackson maintains counsel was ineffective for requesting "all

manner and means"[1] included in the jury charge. To be entitled to federal habeas corpus relief on an

improper jury instruction claim, a habeas petitioner must establish that the erroneous instruction was

so prejudicial that it negatively affected the outcome of the trial. *Tarpley v. Estelle*, 703 F.2d 157,

159 (5th Cir.), *cert. denied*, 464 U.S. 1002 (1983). An improper jury instruction violates a

defendant's constitutional rights if the instruction "by itself so infected the entire trial that the

resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting

*Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

---

[1]The indictment, as well as the jury charge, alleged Jackson had assaulted Mary Roberson
with a dead weapon, " A Table," " A Wooden Leg," " A Wooden Stick," or " An Unknown
Object." *Ex parte Jackson*, No. 14-02-00551-CR at 171-72.

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).   In a collateral proceeding, such as this, the question is "not merely whether 'the instruction is undesirable, erroneous, or even universally condemned,'" but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.*   Given this standard, it is rare that an improper jury instruction will warrant the reversal of a criminal conviction; it is even more rare that an improper jury instruction will warrant the reversal of a criminal conviction if an objection to the allegedly improper instruction has not been made in the trial court.  *Id.*   Finally, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Id.* at 155.

In his affidavit submitted on December 22, 2004, Muhammad stated as follows with respect to the decision to include all manner and means alleged in the indictment in the jury charge:

> As I recall the charge came from the Court as complained of.  We did not object because it was our strategic thought that it would show the jury that the State really had no idea how the Victim became injur[ed].  The only fact common to the injury was the Victim and the Defendant.  He testified from the witness stand that he did not injure the Victim.

> The jury decided what manner and means applied.  The Defendant participated in the decision making process.  We discussed this strategy with him at counsel table, and he agreed.

*Ex parte Jackson*, WR-68,441-02 at 63.

The Texas Court of Criminal Appeals found "the totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel.  The applicant has failed to demonstrate that his conviction was improperly obtained or that he is being

14

improperly confined." *Id.* at 87.  Based on that state law determination, a determination this Court
is in no position to contradict, *Manns v. Quarterman*, 236 Fed. Appx. 908, 916 (5ᵗʰ Cir. 2007) ("On
habeas review, the district court is not permitted to second-guess the Texas court's interpretation of
Texas law but must instead respect it as controlling."), *pet. for cert. filed* (Jul 06, 2007)(NO. 07-
6461), counsel's performance was not deficient within the meaning of *Strickland* and the jury
instruction did not so infect the trial the conviction violated due process.  Therefore, under § 2254(d),
no relief is available on this ineffectiveness claim.

>     **d.    Conflict of Interest**

In his fourth ineffectiveness claim, Jackson complains his trial counsel, Cornelius Long
("Long") had a conflict of interest in representing both Jackson and the complainant, Roberson.  This
issue, however, was addressed directly by the trial court during pretrial motions:

> Mr. Bollinger [Assistant District Attorney]: ...I would like to get on the record, if
> possible, whether or not Cornelius Long represents the victim in this case, Mary
> Roberson.  The two times that I spoke with her, that she would speak with me, she
> said, Speak to my lawyer.  Whenever I pressed her for who that was, she gave me
> the name of Cornelius Long.  Cornelius has told me that's not the case.  I just need it on
> the record so there is clearly not a conflict in this present case.  And if she should
> show up to testify for the defense, she'll then be appointed independent counsel.
>
> The Court: Is there anything pending against her?
>
> Mr. Bollinger: There are four city warrants against Miss Roberson, plus the writ of
> attachment.
>
> The Court: Well, that doesn't take representation.
>
> Mr. Long: No, it doesn't.
>
> The Court: Who is Roberson?
>
> Mr. Bollinger: Mary Roberson.  The victim, Your Honor.
>
> The Court: Mr. Long, do you represent her in any manner?

Mr. Long: No, sir.

S.F. Supplemental Volume 1, Pretrial Motions, May 22, 2002 at 7-8.

In order to establish a violation of the Sixth Amendment, a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Here, because Long attested he did not represent Roberson in any capacity, there is no conflict of interest.  Jackson maintains Long was retained by his mother, Donna Jackson, to represent both himself and Roberson.  However, in light of Long's denial of representation of Roberson during pretrial motions, Jackson's contention is unsupported by the record.  Therefore, no relief is available on this ineffectiveness claim.

### e.    Failing to obtain a hearing on Jackson's Motion for New Trial

In his fifth ineffectiveness claim, Jackson contends his counsel was ineffective for failing to obtain a hearing on his Motion for New Trial.  The record indicates Long filed a Motion for New Trial on June 10, 2002, which was subsequently scheduled for a hearing on July 1, 2002.  Jackson maintains the purpose of the hearing was to either expand the record to include the complainant's affidavits of nonprosecution or to enter ineffectiveness claims against Jackson's trial co-counsel, Muhammad, and previous counsel, Curry.  In an unsworn testimony, Jackson states Long informed him of the hearing date but later cancelled the hearing when he did not receive his attorney's fees.

Jackson fails to satisfy both the deficiency and prejudice prongs of the *Strickland* standard. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption the disputed conduct is reasonable.  Here, Long did file a Motion for New Trial and, assuming Jackson's unsworn testimony is true, only cancelled the hearing after nonpayment by

16

Jackson.  This act, by itself, is not objectively unreasonable.  The prejudice element requires Jackson to show there is a reasonable probability that, but for Long's unprofessional errors, the result of the hearing and Motion for New Trial would have been favorable to him.  Jackson has made no showing that a Motion for New Trial would have been successful.

Accordingly, the Texas courts' rejection of this ineffectiveness claim is not contrary to or an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding(s).  Under § 2254(d), no relief is available on this claim.

### C.   Denying Jackson's motion to dismiss and failing to include an instruction on self-defense in the jury charge. (Claim Five)

In his fifth claim, Jackson maintains the trial court committed reversible error by (1) denying his motion to dismiss and (2) failing to include a self-defense instruction in the jury charge.

#### a.   Denial of Jackson's Motion to Dismiss

Jackson contends the trial court erred by denying his motion to dismiss because there was insufficient evidence to continue prosecution or even to support a determination of probable cause to indict in light of an affidavit of nonprosecution signed by the complainant.  On direct appeal, the Fourteenth Court of Appeals found as follows with respect to the trial court's action:

> Generally, a trial court does not have power to dismiss a case unless the prosecutor requests dismissal.  *Ex parte Seidel*, 39 S.W.3d 221, 223 (Tex. Crim. App. 2001) (citing *State v. Johnson*, 821 S.W.2d 609, 613 (Tex. Crim. App. 1991)).  In addition, "[t]his court cannot review the sufficiency of the evidence to support an indictment, or question whether the grand jury had probable cause to indict."  *Brochu v. State*, 927 S.W.2d 745, 749 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd).  Finally, we note that a criminal conviction,  which requires proof beyond a reasonable doubt, may rest on hearsay despite the lack of the complainant's testimony or even the complainant's recantation.  *See, e.g., Salley v. State*, 25 S.W.3d 878, 881 (Tex. App.–Houston [14th Dist.] 2000, no pet.) (holding evidence legally sufficient although largely presented through responding officer when complainant testified she could not remember any of

17

the events leading to husband's arrest); *Peters v. State*, 997 S.W.2d 377, 382-83 (Tex. App.–Beaumont 1999, no pet.) (holding evidence legally sufficient to establish sexual assault despite being based largely on unobjected to hearsay in face of complainant's recantation); *Tejeda v. State*, 905 S.W.2d 303, 318 (Tex. App.–San Antonio 1995, pet. ref'd) (holding hearsay evidence of responding officer and physical evidence of cuts and bruises legally sufficient despite complaint's having claimed spousal privilege not to testify against husband).

We overrule appellant's point of error one.

*Jackson v. State*, No. 14-02-00551-CR at 5-6.

The Fourteenth Court of Appeals' rejection of this claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence. Here, a review of the record supports the conclusion there was no basis for granting the motion to dismiss. The Texas courts' properly rejected this claim and no relief is available under § 2254(d).

### b. Denial of Jackson's Request for an Instruction on Self-Defense

As set forth above, to be entitled to federal habeas corpus relief on an improper jury instruction claim, a habeas petitioner must establish that the erroneous instruction was so prejudicial that it negatively affected the outcome of the trial. *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir.), *cert. denied*, 464 U.S. 1002 (1983).

On direct appeal, the Fourteenth Court of Appeals overruled Jackson's complaint about the jury charge on state law grounds.

A defendant is entitled to an instruction on any properly requested defensive issue raised by the evidence, regardless of whether the evidence is weak or strong, unimpeached or contradicted, or credible or not credible... [n]evertheless,... [a]ppellant testified Roberson did not hit him. And there is no evidence she hit appellant or that she even threatened him. In short, viewing the evidence in the light most favorable to appellant, we are left with a picture in which appellant assaulted a person who never used or attempted to use unlawful force against him.

*Jackson v. State*, No. 14-02-00551-CR at 6-8, Tᴇx. Pᴇɴ. Cᴏᴅᴇ Aɴɴ. § 9.31(a).

The Texas Court of Appeals' rejection of Jackson's jury charge claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence. In federal habeas proceedings, federal courts are not to review a state's interpretation of its own law. This includes a state's interpretation of its law(s) governing defenses to criminal charges and the applicable jury instructions relative thereto. *Valles v. Lynaugh*, 835 F.2d 126, 127-28 (5ᵗʰ Cir. 1988); *Wimberly v. Dretke*, 2005 W.L. 877934 (N.D. Tex. 2005). Here, a review of the record supports the conclusion of the trial court and Texas Court of Appeals that the evidence did not support Jackson's claim of self-defense. In the absence of some evidence to support Jackson's claim of self-defense under section 9.31(a) of the Texas Penal Code, it was not error to refuse a self-defense instruction. Accordingly, the Texas courts' properly rejected this claim and no relief is available under § 2254(d).

### D.   Evidence is legally and factually insufficient.  (Claim Six)

In his sixth claim, Jackson contends there was insufficient evidence to support his conviction. On direct appeal, the Fourteenth Court of Appeals found the evidence both legally and factually sufficient:

> In point of error six, appellant challenges the legal sufficiency of the evidence to support his conviction of aggravated assault with a deadly weapon; in point of error seven, the factual sufficiency of the evidence. He does not contend the evidence is insufficient on any particular element of the offense; instead, the gravamen of his argument in both points of error is that the evidence is insufficient because "the declarations made by the complainant and her family members... were not credible" when the declarants did not appear at trial and their absence was unexplained.

> When reviewing the legal sufficiency of the evidence, this court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789

(1979); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex. Crim. App. 1993). The standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

As discussed under points of error three through five, the declarations of the complainant and her family members were admissible under the hearsay exception for excited utterances. This exception is founded on the belief that statements made as a result of a startling event or condition are involuntary and do not allow the declarant an adequate opportunity to fabricate, thus ensuring enough trustworthiness to fall outside the rule excluding hearsay. *See Couchman v. State*, 3 S.W.3d 155, 159 (Tex. App.–Fort Worth 1999, pet. ref'd). Moreover, as we stated in analyzing point one of error, a criminal conviction may rely on hearsay despite the lack of the complainant's testimony or even the complainant's recantation. *See, e.g., Salley*, 25 S.W.3d at 881 (holding evidence legally sufficient although largely presented through responding officer when complainant testified she could not remember any of the events leading to husband's arrest); *Peters*, 997 S.W.2d at 382-83 (holding evidence legally sufficient to establish sexual assault despite being based largely on unobjected hearsay in face of complainant's recantation); *Tejeda*, 905 S.W.2d at 318 (holding hearsay evidence of responding officer and physical evidence of cuts and bruises legally sufficient despite complaint's having claimed spousal privileges not to testify against her husband).

In the present case, the State established the elements of the offense not only through Roberson's declaration to Curry, but through the declarations of two other eye-witnesses, as well. In addition, the State introduced Roberson's medical records with an EMS report containing the following notation: "Pt stated that her boyfriend hit her w/ a table multiple times." Viewed in the light most favorable to the prosecution, the evidence was legally sufficient to support appellant's conviction.

*Jackson v. State*, No. 14-02-00551-CR at 11-12.

The Texas courts' rejection of Jackson's sufficiency of the evidence claim is not contrary to or an unreasonable application of clearly established Federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The standard set forth and applied by the Fourteenth Court of Appeals in addressing Jackson's legal sufficiency claim is essentially the same federal due process standard used to assess a sufficiency of the evidence claim in a federal habeas corpus proceeding.

In *Jackson v. Virginia*, 443 U.S. 307, 325 (1979), the Supreme Court held that in order to

20

be entitled to relief on a sufficiency of the evidence claim a petitioner must prove that no rational trier of fact could have found the existence of facts necessary to establish the offense beyond a reasonable doubt. *Id.* at 325-26. In applying the standard, all evidence is viewed in the light most favorable to the prosecution, *Id.* at 319; *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983), *cert. denied*, 464 U.S. 1049 (1984), and all credibility choices and conflicts in the evidence are resolved in favor of the verdict. *United States v. Graves*, 669 F.2d 964, 969 (5th Cir. 1982). Given the evidence recited by the Fourteenth Court of Appeals, evidence that is taken in a light most favorable to the prosecution, a rational jury could have found the existence of facts necessary to establish the aggravated assault with a deadly weapon offense against Jackson beyond a reasonable doubt. Therefore, under § 2254(d), no relief is available to Jackson on his claim there was legally insufficient evidence to support his conviction. As for any claim Jackson may be asserting the evidence was factually insufficient, such a claim is not cognizable in a federal habeas corpus proceeding. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002), *Wanzer v. Cockrell*, 2002 WL 31045971 *9 (N.D. Tex. 2002).

## VI.    Discussion – Procedurally Barred Claims

In claims two and four, Jackson complains about the denial of his Sixth Amendment right to confront and cross-examine witnesses, and the denial of a fair and impartial trial due to prosecutorial misconduct. Although both of these claims were raised by Jackson in his state application for writ of habeas corpus, neither was raised by Jackson in his direct appeal. In the state habeas proceeding, the Texas Court of Criminal Appeals dismissed these claims on state law procedural grounds because they had not been raised on direct appeal and could not be litigated in a state habeas proceeding. In

so doing, the Court of Criminal Appeals found:

> 2.      Because the applicant failed to raise on direct appeal his instant habeas claim that he was denied the right to confront and cross examine several witnesses at trial, the applicant is procedurally barred from raising the claim in the instant proceeding. *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).

> 3.      Because the applicant failed to raise on direct appeal his instant habeas claim that the State should have dismissed the primary case in light of the complainant's affidavit of non-prosecution, the applicant is procedurally barred from raising the claim in the instant proceeding.  *Ex parte Townsend*, 137 S.W.3d at 81.

*Ex parte Jackson*, WR-68,441-02 at 86.

Given the Texas courts' reliance on a state procedural default, this Court can only review the claims on the merits if Jackson can show cause and prejudice associated with his failure to raise the claims on direct appeal or that he is actually innocent of the offense.  *Coleman,* 501 U.S. at 750. Jackson has made neither showing.  While he complains it was the ineffectiveness of his appellate counsel that was the "cause" of his failure to raise the claims on direct appeal, he has not made the requisite showing of prejudice – that is, he would have been entitled to relief on the claims if they had been raised.  As discussed above, given the State courts' conclusion there was sufficient evidence to support Jackson's conviction, Jackson has not stated a viable claim of actual innocence under either *Herrera* or *Schlup*.  Therefore, because Jackson has failed to show cause and prejudice associated with his failure to raise the claims on direct appeal or that he is actually innocent, the claims are procedurally barred from review in this § 2254 proceeding.

## VI.   <u>Conclusion and Order</u>

Based on the foregoing and the conclusion Jackson is either not entitled to any relief in this proceeding under § 2254(d) or his claims are procedurally barred from review, the Court

ORDERS that Respondent's Motion for Summary Judgment (Document No. 12) is GRANTED, that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED, and that this § 2254 proceeding is DISMISSED WITH PREJUDICE on the merits.  It is further

ORDERED that a Certificate of Appealability is DENIED.  A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001).  When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

Given the claims raised herein as well as the rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the procedural rulings or the assessment of Petitioner's constitutional claims to be debatable or wrong.  Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 4th  day of March, 2009.

Frances H. Stacy
United States Magistrate Judge